Hale v. Lawrence.    Howe v. Lawrence.

HALE v. LAWRENCE.
HOWE v. LAWRENCE.

1. That the subject matter of a transitory action occurred in another State,
and was regulated by the laws of that State, does not take away the juris-
diction of the courts of this State to adjudicate and determine it.    •

2. The right of eminent domain is the right of the *government* to appropriate
private property to public use in case of necessity.   It is this taking for
· public use, that is declared by the Constitution of the United States and
that of New York, shall not be done without compensation.

3. The right of necessity is the right of individuals, either singly or collect-
ively, in case of overwhelming necessity to invade or destroy private pro-
perty *without positive law*.   When this right is exercised by government,
through and at the discretion of its officers, regulated by law, it becomes
the right of eminent domain.

4. To justify destruction by inevitable necessity, it must be shewn *to the*
satisfaction of a jury that the necessity was inevitable, or that the plain-
tiff suffered no other loss than else would have certainly occurred.

5. The Statute of New York, passed April 9, 1813, relative to the city of New
York, which authorizes the Mayor in case of fire to destroy buildings to
prevent the spread of conflagration, does not authorize him to destroy the
goods in such building, and is no justification to·an action for the loss of
goods occasioned by such justifiable destruction of the building in which
they were.

6. The destruction of a building by the Mayor under that Statute, is an
official or governmental, and not an individual act, and is not justifiable

by the law of overwhelming necessity, and the law authorizing it is an exercise of the right of eminent domain.

7. The destruction of property for public benefit by an officer authorized by law to do it, is a taking for public use; and a Statute authorizing it in New York, where the constitution requires compensation to be made for property taken for public use, without providing an adequate compensation, is unconstitutional and void.

8. Where a cause of action arose out of this State, and both parties resided out of the State when it accrued, and for the period of limitation, the cause of action is barred by the Statute, and is not within the exception requiring the defendant to have resided in this State for the period of limitation.

These were actions of trespass brought by the plaintiffs in error against the defendant in error in the Supreme Court. The declaration in each case charges that the defendant on the 17th day of December, 1835, at New York, to wit, at Newark, in the County of Essex, with force and arm, did blow up by gunpowder, burn and destroy, a large quantity of goods, wares and merchandise of the plaintiff, whereby the same was totally lost.

To this complaint the defendant has in each case pleaded a special justification, which set forth (a) that he was at the time of committing the supposed trespasses, Mayor of the City of New York, and that by an act of the Legislature of the State of New York, it was enacted " That when any building or buildings in the city of New York shall be on fire, it shall be lawful for the Mayor of the city, with the consent and concurrence of any two of the Aldermen thereof, to direct and order the same or any other building which they may deem hazardous or likely to take fire or convey the fire to other buildings, to be pulled down or destroyed." That at the time of the trespasses in the declaration mentioned, two buildings in the city of New York, to wit, No. 44 and 46 Exchange Place were on fire, and a store which was contiguous thereto, was by the defendant and two Aldermen of said city deemed hazardous, and likely to take fire ; that he with their consent and concurrence caused the same to be blown up with gunpowder, and

(a) See this plea at length.   *Ante p.* 248.

that by said blowing up, said goods, &c. in the declaration mentioned were destroyed.

To this plea the plaintiffs filed in each case a general demurrer.

In the case of *Howe* v. *Lawrence,* the defendant also pleaded the statute of limitations not guilty within six years.   To this the plaintiff replied that defendant.was not at the time when action accrued resident within this state, nor had he resided in the same for so great a time as six years since.   To which the defendant rejoined, that the trespasses were committed and the cause of action arose in the State of New York ; that both the plaintiff and the defendant, at the time when cause of action accrued resided, and have ever since resided out of the limits and beyond the jurisdiction of this State, and in the State of. New York, or in some other of the United States of America. And that ever since the defendant has not had any property within the jurisdiction of this State.

To this rejoinder the plaintiff demurred.

These causes, with thirty others, against the same defendant, all originating from the great fire of 1835, were argued before the Supreme Court ; in one of the others the first plea of justification alone was pleaded ; in each of the other twenty-nine the same plea and that of the statute of limitations were pleaded as in *Howe* v. *Lawrence,* with like replication, rejoinder, and demurrer.

The Supreme Court gave judgment for the defendant in all the cases on the first plea of justification ; (a) and as that entitled the defendant to judgment, no opinion was given on the rejoinder to the replication to the plea of the statute of limitations.

The records were removed to this court by writ of error, and the argument was had at the same time upon the two above entitled causes, in one of which the justification was pleaded alone, and in the other with the statute of limitations.

---

(a) See *Ante.p.* 248.   The cause argued and reported in the Supreme Court was *The American Print Works* v. *Lawrence.*   The cause of *Hall* v. *Lawrence* was the one actually argued and determined in the Court of Errors, and it has been thought best to retain the title under which it was actually argued.

In Trespass.

Mr. *Van Wagenen* (of N. Y.) for plaintiff. It was held in New York, that while the owner of the building destroyed under the provisions of the statute of that state in order to prevent the spread of fire, should be remunerated as well for the damage sustained by reason of the destruction of his goods in the building as by the destruction of the building itself, yet that the owner of goods, not being the owner or occupant of the building, was not within the statute. *Mayor, &c.* v. *Lord*, 17 *Wend.* 285; *Mayor, &c.* v. *Stone*, 20 *Ib.* 139; *S. C. in Error*, 25 *Ib.* 157, 165.

Actions were then commenced against the corporation on the ground of the constitutional provision that compensation must be made for property taken for public uses, but again, the owners of goods destroyed, failed in obtaining any redress. It was held that the statute contained no grant of power, and that the parties must look for their remedy precisely as if the statute had never been passed. The courts of New York have decided that the city is not responsible in any way, and the defendant cannot turn us over on the ground that he was only the agent of the city, however sound that principle may be.

The charge in the declaration is trespass for blowing up goods by gunpowder. The defence or justification under the New York act—that blown up because in a building deemed by certain officers hazardous and likely to take fire.

I. It was unconstitutional to destroy personal property without compensation, and so decided by the courts of New York. The defendant has placed himself upon the statute, and must sustain himself by it. The statute pleaded was an exercise of the *eminent domain*, delegating to the defendant a discretionary power *depending upon expediency, not necessity*. The justification by *necessity*, has never been very clearly defined, but it is well settled that the necessity must be shown to the satisfaction of a jury. It was thought that the power necessary in the emergency of a great fire would be more safely exercised when defined and independent of mere necessity, and therefore by this

statute, property was authorized to be taken when expedient so to do, but· taken, it must be paid for.

Officer were designated by the statute who were to judge of the expediency, and then compensation was provided for the property sacrificed for the common' benefit. It is a common benefit which is provided for, for the advantage will accrue now here, now there; it is for the benefit of the whole city, for the whole city may in turn be exposed to the same danger.

In no case can property be taken for public use without compensation. If the plea sets up no compensation, it is no defence in trespass; 2 *Kent* 339 (*4th Ed.*); *Vattel*, 111; *Bradshaw* v. *Rogers*, 20 *John.* 103; *S. C. Ib.* 744; *Beekman* v. *The Saratoga & Schenectady R. R. Co.* 3 *Paige* 45, (72); *Bloodgood* v. *M. & H. R. R. Co.* 18 *Wend.* 27; *Charles River Bridge* v. *Warren Bridge*, 11 *Pet.* 579; *Bonaparte* v.. *Camden & Amboy R. R. Co. Baldw.* 220; *Jerome* v. *Ross*, 7 *John. Ch. R.* 340.

The destruction of property is a taking within the meaning of the constitution. *Ex parte Jennings*, 6 *Cow.* 525; *The People* v. *Canal Appraisers*, 13 *Wend.* 372.

That the Legislature contemplated an exercise of the power of *eminent domain* will appear by the act itself.· It is a grant of right to destroy, upon compensation to be made therefor. The act is one to be done for a public object, in order to prevent the spread of fire, and what would otherwise be a tort is rendered lawful, justified, but only so under the constitutional provision.

*Damages* are to be assessed, and as nearly similar in mode as possible, as in case of taking lands for docks and slips. The damages are to be in satisfaction of all *demands* by reason of the destruction. The power is to be exercised when the three officers shall think it *expedient,* and not in a case of necessity, merely.

As to the right of *eminent domain,* the counsel cited 3 *Story on the Constitution* § 1784; *The People* v. *Platt,* 17 *John.* 215; *Gardner* v. *The Trustees of Newburgh,* 2 *John. Ch. R* 162; *Varick* v. *Smith,* 5 *Paige* 143, 159; *Matter of Albany street,* 11 *Wend.* 152; *The People v. Morris,* 13 *Wend.* 328; *Vanhorne's Lessee* v. *Dorrance,* 2 *Dal.* 304; *Boston Water Power*

*Co.* v. *R. R. Co.* 23 *Pick.* 394 ; *Lessee of Pickering* v. *Rutley et al.* 1 *Serg. & R.* 514 ; *Enslin* v. *Bowman*, 6 *Bin.* 471 ; *Harding* v. *Goodlett*, 3 *Yerger*, 52 ; *A. K. Marshall*, 85 ; *Wheelock* v. *Pratt*, 4 *Wend.* 649 ; *Chadwick* v. *Proprietors of Haverhill bridge*, 2 *Dane's Abr. ch.* 67 *p.* 686 ; *Stevens* v. *Proprietors of Middlesex Canal*, 12 *Mass.* 466 ; *Hooker* v. *The New Haven & Northampton Co.* 14 *Conn.* 146, 159 ; *Dartmouth College* v. *Woodward*, 4 *Wheat.* 620 ; 1 *B. C.* 139.

It is no matter under the plea in this case what might be the rights of the defendant independent of the statute ; for the plea justifies under the statute. It is a question of authority, and not of duty, under the statute. This is an action of trespass ; the defence admits the act, and attempts to justify under the statute.

The idea cannot be set up that the damages are consequential. The plea does not set up any act of imperative duty, and then aver that the consequence was involuntary.

It is said that the act was an exercise of *eminent domain,* but of the right of *necessity* regulated by the statute. The evidence of necessity was the judgment of the officers charged with the duty.

The principle of *necessity* undoubtedly exists, though very unsettled as to its nature and extent ; the question here is as to its application. *Puffend. lib.* 2, *ch.* 6, § 8 (*p.* 311 *fol. Ed.*) ; *Maleverer* v. *Spinke,* 1 *Dyer* 36 *a ; Mouse's Case,* 12 *Co.* 63 ; 15 *Vin.* 534–5, *tit. Necessity, A.*

The right of necessity is personal to the party ; the act is justifiable in consequence of overwhelming necessity, and cannot be a mere duty resting on expediency. This statute authorizes magistrates to do certain acts ; it does not regulate individual rights, but prescribes official duties.

II. The trial by jury is secured by the constitution of the State of New York—" *to remain inviolate forever.*" To interpret the statute as the regulation of such right, and to render the judgment of the trespasser conclusive as to the fact of necessity, is in effect to take away the right of the trial of jury. The trespasser is made judge, and his judgment made conclusive evidence of the existence of the necessity.

The cases that will be referred to on the. opposite side are those of the exercise of the right of *eminent domain*, where the right to take and the right to compensation are equally clear, and the only question was as to the amount of compensation.

Necessity may be said to exist in two senses. One is that of instant, overwhelming necessity, which will form a personal justification, and the existence of which must be shewn to the satisfaction of a jury by the person who sets up such defence. The other is a looser sense, resting on expediency, of which the legislature is the judge. *Chipman on Government*, 256. Individuals can only justify on the strict principles of absolute necessity. The state may take when expedient, but it must be on compensation.

III. The defendant simply avers that the house destroyed was believed to be hazardous, and likely to take fire. There is no averment that it was likely to convey fire to other buildings.

IV. The execution of the power is not sufficiently averred. The consent and concurrence of the Aldermen and the order of the Mayor should have been in writing, and it should so appear. *Meeker* v. *Van Renselear*, 15 *Wend.* 397.

V. A fifth point applies only to the case of *Howe* v. *Lawrence*. The case is within the exception of the statute of limitations. The defendant, when this cause of action accrued, not being a resident of the State of New Jersey, and the non-residence of the plaintiff is immaterial. *Beardsley* v. *Southmayd*, 3 *Green*, 171, is not sanctioned by the statute. *Rev. Laws* 670 ; *Rev. Stat.* 94 § 8. In *Tuberrer* v. *Brentnall*, 3 *Har.* 262, the only point presented was whether case came within the decision in *Beardsley* v. *Southmayd*. Courts cannot insert in the statute an exception which it does not contain. *McIver* v. *Ragan*, 2 *Wheat.* 25 ; *Demarest* v. *Wynkoop*, 3 *John. Ch. R.* 142 ; *Bulger* v. *Roche*, 11 *Pick.* 36 ; *Ruggles* v. *Keeler*, 3 *John.* 266 ; *Dunning* v. *Chamberlain*, 6 *Vermont*, 130.

Mr. *White*, (of N. Y.) for defendant in error.

This matter arises out of the great fire of New York in 1835.

The parties belong to New York. Failing of success in the courts of that state, the plaintiffs have sought a foreign forum.

Two principles are to be established, and they are sufficient to sustain the defence of the defendant.

1. In regard to rights of action, the law of the place where they originate must govern.

2. If the law of New York gives no right of action, the plaintiffs have no right by which they ought to recover in New Jersey. The law of the State of New York has decided that he has no cause of action, in consequence of the act complained of. The bringing of these suits is in an invitation to this court to extend its jurisdiction beyond its topographical boundaries.

I. The remedy is to be pursued according to the *lex foci*, but the right of action depends upon the *lex loci contractus*. The act charged as an injury in this case was committed in the State of New York, and in another jurisdiction, by whose laws its character is to be determined. *Story Confl. L.* § 64 ; *Ib.* § 558.

II. The only matter admitting of debate is, what is the law of New York ?

By the common law the Mayor or other head officer of any city had, in case of necessity, the right to tear down and destroy the building in question, and thereby destroy the goods in order to arrest the conflagration ; and the existence of the necessity must then be shewn by testimony. But by the statute in New York, the Mayor and two Aldermen are made the sole judges of the existence of the necessity. We set out the statute, and justify under it. If the statute be valid, there is an end of it.

But it is said that the act is unconstitutional and void.

It gives no new authority, and is constitutional. As to the common law right see *The case of the King's Prerogative in Saltpetre,* 12 *Co.* 13 ; *Mouse's Case, Ib.* 63 ; *Respublica* v. *Sparhawk,* 1 *Dallas* 363.

If these cases possess any authority, it is clear that the Mayor for the good of the city and the safety of the citizens, independent of the statute, might lawfully pull down a building, in order to prevent the spread of a conflagration. This law has been fully adopted in New York. *The Mayor* v. *Lord,* 17 *Wend.* 290 ; *Ib.* 297 *Opinion of Bronson, J.*

The necessity at common law must be shewn by witnesses. The statute comes in and prescribes another rule of evidence, the judgment of the Mayor, &c.    Stone v. The Mayor, 25 Wend. 157, 173.

The Legislature had clearly the power to prescribe this mode of evidence.    Modes of evidence are a constant source of legislation.

But it is contended that this is a public taking of private property for public use, and that such taking without compensation is unconstitutional.    But the decisions on that subject apply to a taking as a matter of expediency.    The law of necessity will apply to government as well as to private individuals.    The same necessity may exist on the part of the sovereignty which overrides all constitutions and all laws.    Thus taking by necessity, as seizing munitions of war on occasions of great and imminent danger and the like, which stand on very different grounds from that of eminent domain, to which latter the constitutional provision applies.    Concede this a public taking, yet it is a taking by the public on the ground of necessity, and not under the right of eminent domain.    But I do not concede this to be a taking for a public use.

Our justification as to the building is necessarily a justification as to the goods.    It was impossible to move the latter, and the destruction of the goods was the necessary consequence of destroying the building.    Suppose injury to have occurred by a flying timber from the house as blown up, lawfully destroyed in order to arrest the conflagration, there would be no liability therefor.

It is said that the act takes away trial by jury.    It denies no action.    It recognizes the law of necessity and defines the evidence.    Instead of leaving the necessity to be judged of by any one of an excited mob, it places it in the discretion of certain individuals; a discretion not arbitrary but regulated, secundum arbitrium boni judicis.    See opinion of Senator Sherman, in Lawrence v. Mayor &c. of New York.    In fact the matter is one of police regulation, and the legislation goes rather to the remedy than to the right.

There is nothing in the objection that the authority should

have been in writing. It cannot be that a matter to be done under such circumstances of terror and of haste, in the imminency of so much peril, should be conducted with the formalities of an ordinary judicial tribunal.

III. As to the statute of limitations, the same rejoinder was sustained in *Beardsley* v. *Southmayd*. That decision is right, and policy requires that it should be applied.

At any rate foreigners can come into the tribunals of the state by comity only, and not of right.

*Willis Hall*, (of N. Y.) on the same side.

The dreadful fire of 1835 was unexampled in the extent of its destruction since the great fire of London. Forty acres in the centre of the city were devastated by the flames. The insurance companies were ruined. The merchants were like maniacs, and goods were destroyed even where they had been carried for safety. Goods of the most costly price were utterly valueless, as they lay at the foot of advancing destruction. Under such circumstances this defendant, as the mayor of the city, was called upon to act and to blow up the houses in which were the goods in question, as a last resource to save the city. The goods were destroyed in these houses, and under circumstances in which they were utterly valueless.

It was under these circumstances that the act charged was done, and for which the defendant is in no wise responsible to an action at law. So settled in the courts of New York, the law of which state, as the *lex loci contractus*, must govern. *Bank of the U. S.* v. *Donnally*, 8 Pet. 361 ; *Wilcox* v. *Hunt*, 13 Ib. 378.

Comity demands that the decisions of the neighboring state in a matter solely arising within her limits, should be respected.

I. Assuming the taking to have been an exercise of the right of eminent domain, and for public use, still the law was constitutional. The law favoreth things for the good of the commonwealth; and the pulling down of an house of necessity to stay a fire, is cited an instance in which such favorable construction will be given. *Noy, Max.* 26.

The statute authorized the destruction of the building for the

purpose of staying the fire, and provided full compensation therefor. If unforeseen damage occurred in consequence of the lawful act of the defendant, the statute is not therefore unconstitutional, nor is the defendant, a public officer, liable for such damage. The defendant was required to act in the mode prescribed by the statute, and it would have been no defence or excuse for not performing his duty, that there were goods in the building. The goods were stored subject to the provisions of this law.

The common law supplies any thing necessary to make a statute effectual. *Dwarris* 633.

If excess should have been replied. The injury to the goods was consequential and accidental, for which the defendant, if he acted faithfully, is not liable. 9 *Conn.* 436; *Callender* v. *Marsh*, 1 *Pick.* 430; *The Grocers' Co.* v. *Donne*, 3 *Scott* 356; 2 *Bing. N. Cas.* 34; *Steele* v. *The President &c. Western Inland Lock Navigation*, 2 *John.* 283; *Boulton* v. *Crowther*, 2 *B. & Cr.* 703; *The Plate Glass Co.* v. *Meredith*, 4 *T. R.* 794; *Lansing* v. *Smith*, 8 *Cowen* 146; *Rowe* v. *The Granite Bridge Co.* 21 *Pick.* 344.

The case of *Ten Eyck* v. *The Canal Co.* 3 *Harr.* 200 might seem inconsistent, but the distinction is that if the injury be by individuals or by private corporation then liability for consequential damage; but it is otherwise in the case of action under the authority of the law for public purposes. In such case there can be no remedy against the public agent, but only by an appeal to the justice of the Legislature.

II. But the act was not done in the exercise of eminent domain. Property is what the laws make property, and when they declare it shall be destroyed for some injurious consequences, they fairly declare that such shall not be property. The building here threatened danger, and was lawfully cast down; as much so as might an overhanging tower which threatened danger. Such is the case of infectious goods for which no compensation provided. 1 *N. Y. Rev. Stat.* 430.

Sufficient, if likely to produce injury. 1 *Petersd. Ab.* 791.

These goods were destroyed in consequence of an overruling necessity, and it is a case tacitly excepted from the operation

of the constitution. When so done, it may be considered as done not by the individual who fired the match, but in reality by an agency moved by the same hand that makes the storm. 15 *Vin.* "*Necessity;*" *Bac. El.* 25 ; *Noy, Max.* 25 ; 2 *Kent* 338.

Compensation is made for injuries ; this statute is in affirmance of a common law right. *Sutton* v. *Clark,* 6 *Taunt.* 29 ; *Sinnickson* v. *Johnson,* 2 *Harr.* 129 ; *Ten Eycke* v. *Canal Co.* 3 *Ib.* 200.

The defendant acted in a judicial capacity, and if within the scope of his authority and without malice, is not liable to an action. *The Mayor &c.* v. *Bailey,* 2 *Denio* · 448 ; *Russell* v. *Mayor &c. Ib.* 461.

III. As to the statute of limitations, the court will hesitate to overrule decisions, the policy of which is so apparent.

Mr. *Vroom,* in reply.

The statute of New York, which has given rise to the present controversy, authorizes measures to prevent the extension of fires, and legalizes those measures by providing compensation for the consequent injury to individuals whose property is taken. The whole difficulty has grown out of the narrow construction given to the act by the Courts of New York, though it will not be pretended that those decisions can be here overruled. The opinion of NEILSON, C. J. in 17 *Wend.* 288, we think gave the true construction.·

But compensation was made to great extent, and to all who sustained injury, except the plaintiffs and those standing in the same position.

This is an action of trespass for tort by direct force, and not for any mere consequential injury. The defendant justifies under the statute already referred to, though I do not see how he can claim the protection of the statute and yet deny the corresponding duty of compensation.

The claim in the present case is for goods that might otherwise have been saved.

There is no decision in New York which·forecloses our right to bring these suits.

Comity of strangers to sue in our courts is now mere theory: it is now really of right.   See *Story Confl. L.* §§ 539, 541.

I. The object and character of the statute, which takes private property for public use making compensation, and is therefore an exercise of the right of eminent domain.   By a narrow construction it is restricted to certain property for which only compensation is provided.   The present case is not within the statute, and therefore it forms no justification.

As an act of eminent domain the statute is perfectly consistent; but the legislature cannot confer the right to take property upon the ground of private necessity.

They shew that this law did not authorize this property to be taken, else compensation; and yet, which is singular, they set up this law as a justification.

The destruction of the plaintiff's property in this case was not a consequential act, and is not so pleaded.   It is not averred that the destruction of the building was done with due caution, and that the excess was involuntary.   If consequential injury, still the defendant is liable.   *Ten Eyck* v. *Canal Co.* 3 *Harr.* 200; *Hooker* v. *New Haven & Northampton Co.* 14 *Conn.* 146.

This was a grant of power virtually to the city, to be exercised in a particular way by the officers of the city, for the benefit of the city.   The city has been prosecuted and has escaped responsibility, it must be because the injury was not consequential—part of the act itself.   If a grant of power, then it goes beyond the common law right of necessity, and must be justified upon other principles.

II. The law of necessity is a law of self defence.   It is personal, not official.   It operates not voluntarily but by compulsion when the necessity arises, and is beyond and above rules.

The statute is not merely in affirmance of this common law right, for it grants power upon prescribed terms, as if this law without rules could be reduced to defined limits.   That this irresistible necessity should be conclusively ascertained by the judgment of these men, whose necessity will be expediency.

This statute is not in affirmance of the common law; for it is in derogation of common right, making the actor the conclusive judge of the validity of his own acts.

It admits the right of compensation.

The defendant relies upon the justification of necessity, and yet as the statute is pleaded, the plaintiffs are cut off from traversing the fact of necessity.

III. The right of trial by jury is taken away. There is a question of right which must be settled by a jury. Judgment is given on the evidence before it comes to a jury.

IV. The case is within the exception of the statute of limitations cited and commented on. *Rev. Stat.* 94 § 8 ; *Beardsley* v. *Southmayd,* 3 *Gr.* 171 ; *Le Roy* v. *Crowningshield,* 2 *Mason* 151 ; *Angell Lim.* 68 & note.

NEVIUS, J. Before examining the important questions involved in this case, I will advert briefly to the suggestions of the defendant's counsel, that the cause of action arose in New York ; that the defendant resides in New York ; and that this cause, or others of like character, and arising out of the same transaction, have already been adjudicated in the courts of that state ; and that the law of the case, as settled by such adjudication, should govern this court. The answer to the first of these suggestions is, that the action is transitory, trespass to personal goods, and may be prosecuted wherever the defendant may be found, and brought within the jurisdiction of a court having cognizance of such actions ; that the defendant has filed no plea to the jurisdiction, but by pleading in bar to the action, has admitted the jurisdiction of the court. And as to the second suggestion, if it were indeed true that the questions here involved, had been settled by the tribunals of New York in other like cases, it would not constitute an exception to this jurisdiction, however important their bearing might be upon our final judgment. While the courts of New Jersey will abstain from jurisdiction, where it is not clearly conferred by law, and whilst they will extend all proper courtesy to foreign courts and their decisions, they will not feel themselves at liberty to deny process and jurisdiction merely from considerations of courtesy to such courts, or from motives of convenience to themselves or suitors. I find nothing in these suggestions, therefore, which should deter this court from examining and

adjudicating upon the main questions which have been raised by this plea and demurrer, and have been so ably discussed before us. I proceed to such examination.

The first point or position taken by the plaintiffs in error is, "That the statute pleaded in bar or justification, by the defendant was an exercise of eminent domain, delegating to the defendant a discretionary power depending upon expediency, not necessity, to be exercised as occasion might require for the common benefit of the city ; the power conferred being co-extensive with the provision for compensation. And that the authority to destroy did not extend to personal property."

The position assumed and contended for by the defendant is, "That the statute conferred no new power, but only regulated the exercise of a natural right inherent in the citizen, substituting the discretion of certain public officers, to determine the necessity of the act done, in place of the verdict of a jury."

The first step in the progress to a decision of this case, is to determine which of the foregoing positions is sound and true, and sustained by the law of the land. And in order to this it will be proper to define with precision, what is this power of eminent domain, as laid down by elementary writers, as well as to ascertain, with like certainty, what is this natural right, which is said to arise on occasions of absolute or overwhelming or extreme necessity, and constitutes a justification for an act which in itself is a trespass ?

The right of eminent domain is a branch, or part, or a necessary and inseparable attribute of sovereign power, and it vests in the legislature of every civil and independent government the control of private property for public uses, and for public uses only. 2d Kent 275. This right of control over private property extends not only to its appropriation to public necessities, but also to public good, interest and convenience, yet it is not an unlimited and unrestrained right. The Constitution of the United States, the Constitution of the State of New York and of other States, have attached a condition to its exercise, and declare " That private property shall not be taken for public use without just compensation." And any law which permits the taking of the property of an individual for public

use without providing by its own terms for compensation, is unconstitutional and void, unless compensation is provided by some other law, either general or special. Whether or not, a law authorizing the destruction of private property for public benefit or safety, is to be esteemed a taking of it for public use, (as has been held by the Supreme Court of New York, 13 *Wend.* 272,) such a law is nevertheless an exercise of the right of eminent domain, and if it makes no provision for compensation to the owner, the law is either unconstitutional, and its execution may be judicially restrained by virtue of the paramount provision of the constitution until compensation be made, or if the destruction takes place, before such restraint can be obtained, the right of the owner to compensation is still complete upon principles of natural equity, though the remedy may be imperfect, resting only in an appeal to the justice of the Legislature.

The right to take or destroy private property, by an individual in self defence, or for the protection of life, liberty, or property, (if it can be esteemed a legal right at all) is one of a different character; it does not appertain to sovereignty, but to individuals considered as individuals; it is a natural right, of which government cannot deprive the citizen, and founded upon necessity and not expediency. It may be exercised by a single individual for his own personal safety or security, or for the preservation of his own property, or by a community of individuals, in defence of their common safety, or in the protection of their common rights. It is essentially a private and not a public or official right. It is a right not susceptible of any very precise definition, for the mode and manner and extent of its exercise must depend upon the nature and degree of necessity that calls it into action, and this cannot be determined, until the necessity is made to appear. *Ld. Hale* calls it the *lex temporis et loci,* and one of the counsel has aptly termed it the *lex instantis,* lawless, but not responsible. It is rather a right to justify an act done, than a lawful right to do an act of violence to the person or property of another, for such other has an equal right to defend his person or property from violence. A few instances will suffice to illustrate this right. A

man may justify taking the life of his adversary where it is necessary to save his own, or destroying his neighbour's property, in some cases, for the preservation of his own. So the people of à neighborhood may justify a trespass on another's grounds to distroy noxious animals; and in a densely populated town, all may unite in destroying a building to stop a conflagration which threatens destruction to the rest. But in all these cases the act done is in the individual capacity of him who does it, and it is done upon his own responsibility and at his own peril. The law esteems all private property sacred from the violent interference of others, and he who takes, injures, or destroys it, will be held a trespasser, until he shews a justification. A necessity extreme, imperative or overwhelming, will constitute such a justification, but mere expediency, or public good, or utility, will not answer. The public interest or welfare is not left in the keeping of private individuals. This justification, therefore, under a plea of necessity, is always a question of fact, to be tried by a jury and settled by their verdict, unless the sovereign authority shall have constitutionally provided some other mode.

With this brief exposition of what is meant by this right of eminent domain, and what is this natural right resulting from necessity, I proceed to the examination of the statute which has been pleaded in bar to this action, and inquire whether it confers upon the Mayor and two Aldermen of the city of New York, a right of eminent domain, or is a mere regulation of the right of necessity, already and before existing in the defendant, or in others the citizens of New York as a community of individuals, or in the corporation of that city as a body corporate.

The statute pleaded was enacted in April, 1813, and is entitled "An act to reduce several laws particularly relating to the city of New York, into one act." The 81st section of this act, makes it *lawful* for the Mayor, with the consent and concurrence of two Aldermen, to order and direct any building which shall be on fire in the city of New York, or which they may deem hazardous and likely to take fire, or to convey the fire to other buildings, to be pulled down and destroyed. And it pre-

scribes the mode of assessing the damages which " the owners of such building and all persons having an estate or interest therein, have sustained by the pulling down, or destroying thereof;" and this mode is the same as that provided in the same act, in relation to ground taken for public purposes. And upon such assessment being made, it further enacts that the payment of such assessment, by the corporation of the city, to the persons in whose favor such assessments shall be made, shall be in full satisfaction of all "demands of such persons, by reason of the destruction of said building." And the 83rd section of the same act provides that the sum assessed for any building so destroyed shall be borne and defrayed by the corporation.

This is the substance of the act pleaded in justification of the trespass complained of. Does it confer upon the defendant and the two Aldermen a new and independent power, which did not exist in them before? or is it the mere regulation of an already existing natural right in them, which they might exercise independent of the statute? Before I refer to the extent of the power conferred by the legislature in this statute, I seek to ascertain its natural character, and whether it is a power of eminent domain, or an increase or adjunct to the right of self-protection, natural and inherent in the officers designated in the act? And this question seems of easy solution. Does the statute confer any right? if it does, it is clearly not a natural right, for such right existed before, and if it did not, the legislature could not grant it; such a right is antecedent and paramount to any civil right in the power of the legislature to grant. Beyond all doubt the statute contains a grant of a right, an authority, that did not before exist in the chief magistrate of the city of New York and his subordinate officers, as such. It may be that in their individual capacity before the passage of the act, they might have justified the act complained of, upon the ground of inevitable necessity, but they could not before the statute, have justified the act, on the ground of their own discretion, either in their private or public capacity. As individuals, or as inhabitants in the district which was threatened with this destruction, they may have had a natural right to

destroy either the building or goods which were destroyed; if they did so, they would have been bound to establish to the satisfaction of a jury, that it was a case of inevitable necessity, or that the plaintiffs sustained no injury beyond what would otherwise have been occasioned by the fire, before the law would have acquitted them of the trespass.   And as public officers, they had not, without the statute, the power to destroy either the building or the goods, and much less the power to destroy them at their mere discretion, without legal responsibility.   As individuals, their right of self protection did not extend beyond that object, except at the instance of him whose life or property was placed in jeopardy.   Men cannot constitute themselves judges, except in cases of extreme necessity, and volunteer to set all things right, according to their own estimation of right, and determine the necessity of an act, which does not affect their own individual rights or interests.   As a magistrate or public officer, the defendant had no irresponsible and discretionary authority to destroy the plaintiff's property, unless it was granted to him by the Legislature.  'The defendant, then, without the provisions of this statute, had neither a natural, discretionary and irresponsible power, nor an official, discretionary and irresponsible power to do the act which by his plea he admits he did do.   But he says the statute conferred that power upon him, and he exercised it pursuant to the statute.   It will then follow that the statute pleaded in bar was a new grant of power, not before existing in the defendant, either in his individual or in his official capacity, and in my opinion it was a grant of eminent domain.

1st.  Because the statute made it lawful for the Mayor and Aldermen to pull down and destroy the building of another, under certain circumstances, and the act of doing so therefore is no trespass.   The statute is an absolute bar to an action against them for destroying a building, and not a mere justification or excuse for the act, as would be the plea of necessity, in case it was destroyed under pretence of absolute necessity and by virtue of natural right.

2nd.  Because the statute imposes upon the corporation of the city of New York the duty of making compensation to the

owner of a building so destroyed, when if destroyed in consequence of an overwhelming necessity, he would not be entitled to such compensation, nor would the city be bound to make it. And this provision for compensation in the mode prescribed, clearly implies that the power granted was to be exercised for the public good and common welfare of the city, as the compensation was to be paid out of the city treasury or levied upon the whole people of the city.

3d. Because the statute provides the same mode of ascertaining the damage, and making the assessment for buildings so destroyed, as is provided in cases where land is taken for public purposes, the taking of which is clearly an exercise of the right of eminent domain.

Lastly. The grant of this discretionary power to destroy buildings in cases of fire, was made at the instance of the corporation, and conferred upon the defendant and aldermen in their public and official capacity, and for the public safety and public welfare, it was not confined to any particular locality, but was co-extensive with the limits of the corporation.

For these reasons I can view this grant in no other light than as a grant of eminent domain, to be exercised by such public officers as the inhabitants of the city might from time to time elect, and in whose discretion they entrusted the exercise of this power, for which they themselves as a body corporate were to respond. And having arrived at this conclusion, I proceed to inquire into the extent of the power granted by this act.

The language of the act is, "that it shall be lawful for them to direct and order certain buildings to be pulled down or destroyed, and that the damages which the owners of such buildings, and others having as estate or interest therein had respectively sustained by such destruction, shall be assessed by a jury, and that the amount so assessed shall be paid by the corporation, to the person in whose favor such assessment shall be made, in full satisfaction of all demands of such persons respectively, by reason of such destruction."

Under this statute the act permitted to be done is the pulling down or destroying a building; the persons to be compensated

are the owners and such persons as have an estate or interest therein, that is such building, as tenant or occupant, owner in fee, remainderman or reversioner, or mortgagee, or in fine, any body who may have a property in possession or expectancy in the building so destroyed.    And the satisfaction of all demands, by fair, logical, and legal construction, applies to demands arising from the loss of the building and not the loss of the goods that it may contain when destroyed.    The act makes no mention of personal goods ; it makes no reference to personal goods ; it provides no compensation for the destruction of personal goods ; it confers no power by express terms to destroy personal goods, but the right to destroy buildings and buildings only.    I know that the courts of New York, in their construction of this statute, have extended its relief to the tenant or owner of the building by allowing him compensation for the loss of goods belonging to himself, which were in the building at the time of its destruction, and even by allowing him compensation for advancements made by him on goods held in such building under consignment, whilst they have refused to extend the like relief to the owner of other goods in the same building, involved in the same destruction by the same act, because he had no estate or interest in the building itself.    With all proper respect for the courts which have so construed this statute, I cannot yield my assent to such construction, and feel the more warranted in withholding it, when I find learned and eminent judges of the same state likewise holding a different opinion, and maintaining that opinion by arguments more satisfactory to my own mind.    I cannot think that the construction given to this statute by the courts of New York, corresponds either with the true intent of the Legislature, or any intent apparent on the face of the statute.    I cannot but consider such construction as unequal and unfair in its principle and operation, for it is granting to the citizen what it withholds from the stranger, and to the trustee who was present to save and protect his own property, a compensation for his own loss, while it denies to the absent *cestui que trust* a like indemnity for a like loss, incurred by the same act.

I do not find in this statute any express authority conferred

upon the Mayor and Aldermen to destroy goods and merchandize at their discretion, nor do I find that it allows any compensation for the destruction of merchandize either to the owner of the building or to any body else whose goods may be destroyed by the act of pulling down or destroying the building. But it is contended that the destruction of the plaintiff's goods in this case, as well as the goods of others, in like cases, is implied in the grant, in other words that the destruction of the goods necessarily and unavoidably resulted from the exercise of the power granted.    I cannot think so; I cannot think that the Legislature of New York, when they enacted this statute, contemplated either the necessity or the expediency of destroying personal goods to stop a conflagration, which would not otherwise be destroyed by the conflagration itself—or that they intended to invest those officers with a discretionary power to destroy personal goods or to provide a justification for such a destruction.    Had such been their intent, or had they contemplated that such would or might be a necessary consequence of the exercise of the power granted, while they were providing an indemnity to the owner of the building, is it not due to their sense of justice to say, they would also have provided an indemnity to the owner of the merchandize so necessarily destroyed.    I speak now of a direct and certain and not a mere incidental, consequential or uncertain destruction of goods, such as could not be foreseen as a necessary result of the construction of a building, and of course could not be provided against.    There is nothing in the terms of the statute, or in its object and design, or in the circumstances under which the power conferred was to be exercised, or in the nature of personal property, to warrant the inference that the Legislature intended to invest the defendant and his associates either with a direct and absolute, or with an incidental and implied power to destroy such property.    The very effort and force required to destroy personal property, which could be saved from conflagration by any possibility, would be sufficient to remove it and save it from destruction, but if it were beyond the possibility of escape or preservation, its destruction by the act of these officers could work no injury, which would not otherwise have

occurred, and in that case such a defence, if properly pleaded and proved, would avail them.  I will not say that if in the destruction of a building by gunpowder, some consequential injury or loss should result to the personal property of another, which could not be foreseen or provided against by ordinary prudence, that these officers would have been liable to an action in their individual capacity for such loss or injury, or that they might not plead this statute in bar of such action, but I don't hesitate to say, that I find no warrant in the statute for the direct and immediate destruction of personal property, by a direct act of force and violence.  This is an action of trespass for a direct and forcible destruction of the plaintiff's goods, the form of the action is not objected to, nor does the defendant by his plea deny the trespass, but sets up the statute in justification of the act complained of.  Nor could he object to the style of action ; for the act by which the building was destroyed destroyed also the goods.  And it might as well be said that the destruction of the building was the consequence of blowing up the goods, as to say that the loss of the goods was the consequence of blowing up the building—both were destroyed by the same agent and by the same direct and forcible act.

From the view I have taken of the case thus far, I have arrived at the conclusion that this statute contains no authority, either in express terms or by necessary implication, to destroy the plaintiff's property, and that the plea constitutes no justification.

But if I am wrong in this, and if it were in fact true that the destruction of this property was in pursuance of the fair import of the statute, yet it is equally true that the Legislature have made no provision for compensation to the owner.  Such has been the decision in all the courts of New York where the question has been raised.  Or at least it has been again and again decided in those courts, that this statute has made no provision to compensate the owner of goods destroyed, unless he has some estate or interest in the building ; and it is clear that compensation has been provided by no other statute.  If we admit then that the statute made it lawful for the defendant to destroy the plaintiff's goods, and if we yield to the decisions of the courts of

New York that there is no compensation allowed for the loss, the question is then presented, is the statute constitutional? The Chief Justice, in giving his opinion in this case, says: "That if the statute authorizes the destruction of private property for public use, within the meaning of the constitutional provision, then it is clearly unconstitutional, and cannot avail the defendant as a justification." But he denies that this was taking private property for public use. I admit that if these goods were destroyed by the defendant, acting in his private and individual capacity, and by virtue of his natural right, in extreme necessity to secure his own personal safety or the safety of his own property, they could not be said to be taken for the public use, nor would the plaintiff be entitled to compensation, unless the defendant has failed to satisfy a jury of the existence of such necessity. But the defendant has not pleaded that he committed the act complained of in his individual capacity and in consequence of any such necessity, but he pleads that he committed it in his public and official capacity, and in pursuance of the authority vested in him by the statute. If the authority conferred on him by the statute, then, is a power of eminent domain, as I think I have shewn, the act which conferred it is unconstitutional, and is no defence here, as it has not provided for compensation, unless it can be demonstrated that these goods were not taken for public use. Let us see if they were not taken or destroyed for the public use in the constitutional sense of the phrase. Had the statute conferred upon the Mayor and Aldermen the right, at their discretion, to take these goods and appropriate them to some public purpose, in which the citizens of New York had an interest, can it be doubted but that it would be done in the exercise of sovereign power, and that it would be a grant of eminent domain, and that if the right of compensation did not accompany the right of appropriation, the act would have been unconstitutional and void? Does the right then to destroy personal or real estate, goods or houses, when done for the public use or the common benefit of all the people of an incorporated city, differ in principle or effect so far as regards the owner, from the right to use such property? Is not the taking and destroying private pro-

perty for the public use and benefit, the same as appropriating it to such use and benefit? Can the Legislature grant to an individual, or the chief magistrate of a town, or to a corporation, the right to destroy a private dwelling to make room for a street or public wharf, without compensation to the owner, while they are constitutionally bound to make compensation for the land occupied by such improvements? I will not multiply cases. The same principle applies, whether private property is used for public benefit, or destroyed for public benefit—to wit, that there shall be no violation of private right, or no deprivation of private property, by the sovereign power without just compensation. And any other construction of this constitutional provision, seems as inconsistent with natural justice as with sound law and sound sense. But again it is said that the destruction of this store and its contents was not for the public use or benefit. If it was not done under the authority of the statute, but by the defendant, by virtue of his natural right, and in defence of his own or his neighbor's property, or by a number of individuals to prevent a common calamity that threatened a particular street or district, the position would be true. But this is not the case. The defendant by his plea says it was done under the authority of the act, and the authority was conferred by the act for the common benefit of the whole city, and not for any particular portion of it. It was conferred upon the chief magistrate and his associates chosen by the citizens of New York, for its discretionary exercise, in all cases of fire, and for the public welfare and public safety, and it extended everywhere throughout the limits of the corporation. To constitute a public use or benefit, it is not necessary that every citizen should have a direct interest in such use or benefit; it is sufficient if every citizen may have such an interest, or an indirect and remote interest. Lands taken for streets, wharves, or other public improvements in the city of New York, are taken for public use, yet the great mass of the people may derive no benefit from such use. The destruction of a building or a cargo of merchandize to stop a fire, or prevent a contagion, may be for the public benefit, yet nine-tenths of the people of the state may have no particular interest in such destruction.

I repeat, then, that if the statute pleaded in bar in this case gave to the defendant the right to destroy the goods in question, and if he did destroy them under and by virtue of that right, (which his plea alleges,) then it was done for the public use and benefit, and it was the destruction of private property for public use, and as the statute has provided no compensation, it is, according to the language of the Chief Justice, "unconstitutional, and cannot avail the defendant as a justification."

For these reasons I am of opinion that the judgment of the Supreme Court should be reversed, and the cause remanded to be proceeded in according to law.

In the foregoing opinion I have not referred to all the decisions in the courts of New York, made in these commonly called fire cases, but upon a careful examination of them, I have not been able to find that the main question involved in this case has ever undergone the solemn adjudication of any of those courts. I feel, therefore, the less reluctance in pronouncing this opinion, as I cannot come in conflict with them upon this question.

In the case of *Howe* v. *Lawrence*, an additional question has been raised, to wit, the statute of limitations. The defendant's 2d plea in this case is, that he was not guilty of said trespass at any time within six years next before the commencement of this suit. To which the plaintiff has replied, that when the cause of action accrued the defendant was not resident in this state, and that he has not been resident in this state for six years, or for so long a term as six years, since the cause of action accrued, and before the commencement of this suit. And the defendant has rejoined that the said trespass was committed in the State of New York, and without the jurisdiction of this state, and that the cause of action accrued in the State of New York and not in this state, and that when the trespass was committed and the cause of action accrued, and for a long time after, as well the said plaintiff as the said defendant were not resident in this state, but in the State of New York, or some other of the states of the United States of America, and have ever since resided out of and beyond the limits and jurisdiction of this state. And that the said defendant had not nor has he now any rights or

credits, moneys or effects, goods or chattels, lands or tenements within the jurisdiction of this state, and that the said cause of action did not accrue to the plaintiff within the jurisdiction and limits of this state. To this rejoinder, which I have substantially stated, the plaintiff filed a general demurrer, and also assigned special causes which I deem it unnecessary to notice, as the true question is fairly presented by the general demurrer. This demurrer calls for a judicial construction of our statute of limitations, if indeed it is susceptible of more than one construction. It is our own statute, and not the statute of a foreign state, that we are to construe. The 1st section of this statute declares " That all actions of trespass shall be commenced and sued within six years next after the cause of such action accrued, and not after." And by a supplemental act it is provided, that " if any person against whom there is, or shall be any such cause of action, as is mentioned, in the first section of the original act, shall not be resident in this state when such cause of action accrues, or shall remove from this state after the same shall accrue, and before the time of limitation is expired, then the time during which such person shall not reside in the state as aforesaid, shall not be computed as part of the limited time within which such action is required to be brought; but the person having, or who may have such cause of action, shall be entitled to all the time mentioned for bringing said action, after the cause thereof shall accrue, exclusive of the time during which the person liable to such action shall not be resident in this state as aforesaid."

Before examining this statute in detail, I remark that a citizen of a foreign state has a constitutional and legal right to come into our courts and prosecute his suits, if within their jurisdiction, and when he does so, he is entitled to the same privileges and immunities and the same measure of justice in the administration of the law, as if he were a citizen of our state. This is so, not only in virtue of the 2nd section of the 4th article of the Constitution of the United States, *Wash. C. C. R.* 381, but by the comity of all civilized nations. And I remark further, that a statute of limitations is local, operating upon the form of action and the remedy, and not upon the nature, va-

lidity, or construction of a contract or right, and it cannot be pleaded in bar to an action brought in another state to enforce such contract or right.   It is our statute, therefore, which the defendant has attempted to interpose as a bar to this action, and it is our statute we are to examine.   And I find in it no distinction made between resident and non-resident creditors or plaintiffs.   Nor do I find either in the reason or nature of the thing, or the language of the act, anything to warrant the conclusion that the Legislature intended to make any such distinction.   The words are, *the person* who shall have cause of action, shall be entitled to six years to bring such action, exclusive of the time that the defendant shall be non-resident in the State.   It is not the *person who shall be a resident,* but it is any person, resident or not, who shall have cause of action.   There is no exception as to non-resident plaintiffs; there was no reason or propriety in making such exception, nor would such exception have been sanctioned either by the reason of the case, the constitution of the country, or the law of comity between nations.   Suppose that the Legislature had enacted in express terms that a citizen or resident of New Jersey shall be at liberty to bring his action in our courts on any contract, or for any cause of action, in six years from the time of the accruing of his cause of action, but that a citizen of another State should not have that liberty, I ask how such an enactment would have corresponded with the spirit of the constitution, the spirit of our institutions and laws, or the comity of nations. The Legislature never intended to place citizens of other states, when plaintiffs in our courts, upon a less favorable footing than our own citizens.   If such had been their intention, it would have been so expressed.   The statute of limitations of no state has drawn a distinction between resident and non-resident plaintiffs, to the prejudice of the latter.   Where such distinction has been made, it has been in favor of non-resident plaintiffs.   Such is the statute of Virginia, which permits a foreign creditor to bring his action at any time within three years after coming into the state, no matter when the action accrued.   3 *Cranch* 174.   And there is good reason for such a distinction,

for a creditor is not bound to pursue his debtor into a foreign tribunal, though he may do so. It is the duty of the latter to seek out his creditor and settle and adjust his claim. In *Chomqua* v. *Mason et al*, 1 *Gal. C. C. R.* 342, it was held a good replication to the plea of the statute of limitations, that the plaintiff was a foreigner and had never been within the state where the suit was brought. The fact that both the plaintiff and defendant were resident of another and the same state, when the cause of action accrued, and continued to be resident in such state (if that fact is intended to be alleged in the rejoinder in this case) can make no difference, unless we are to regard the statute of limitations of such state which we cannot do, and perchance there may be no statute of limitations in such state. If the rejoinder intends only to aver that neither plaintiff or defendant were resident in New Jersey when the cause of action accrued, and have not been resident here since, but have resided in different and separate states, then surely our statute ought not to be a bar to the action. Suppose a resident of Pennsylvania contracts a debt or commits a trespass in New York, and afterwards refuses to go within the jurisdiction of that state, and is sued in our courts after the lapse of six years, would it be pretended that he could set up our statute in bar of the suit, or that the Legislature ever intended that he should have the benefit of it? In that case the plaintiff would be in no laches, for he was not bound to go to Pennsylvania to bring his action, and the defendant would be without the terms and spirit of the statute. If our statute could not in that case be pleaded, much less would the statute of limitations of New York or Pennsylvania be a bar, and without the statute there would be no bar.

In the case of *Le Roy* v. *Crowningshield*, 2 *Mason* 151, Judge STORY has discussed at length the principles arising from the statute of limitations, and remarks that there are some doctrines so well established that it would be a waste of time to defend them. Among these are the following: " That remedies must be according to the place where the action is brought." " That every nation gives to foreigners the same right to enforce their rights as it does to its own citizens." " That a remedy against a person may be maintained in a foreign forum, though barred

in the place where the contract was made."   " That laws of one country have no extra territorial force, except by the comity of nations."   If these principles be true, then the plaintiff is not barred of his action here, unless he is barred by our statute.   I can find no such bar either in the words, or in any fair interpretation of the statute, and I am unwilling to add to, or take from it.   In *Clemenston* v. *Williams*, 8 *Cranch* 72, Chief Justice MARSHALL said : " That the statute of limitations was entitled to the same respect with other statutes, and ought not to be explained away."   Justice Buller said, " We are bound to take an act of Parliament as it is made—a *casus omissus* can in no case be supplied by a court of law."   1 *T. R.* 52.   Lord Tenterden said, " There is always danger in giving effect to what is called the equity of a statute, and it is much safer and better to rely on, and abide by the plain words, although the Legislature might possibly have provided for other cases, had their attention been directed to them."   6 *Barn. & Cress.* 475. In *Fisher* v. *Handen, Paine's C. C. R.* 61, Justice Livingston said, " The court disclaims all right or inclination to put on the statute of limitations any other construction than the words import.   It is as much a duty to give effect to these laws, with which courts however sometimes take great liberties, as to any other which the Legislature may pass.   When the will of the Legislature is clearly expressed, it ought to be followed without regard to consequences, and a construction derived from its reason and spirit, should never be resorted to, but where the expressions are so analogous as to render such mode of interpretation unavoidable."   And in the case before cited, 2 *Mason* 151, Judge Story said " he would not consider what in theory ought to be the law upon philosophical and judicial reasoning, but follow the humbler duty of administering the law as he finds it."

These are safe doctrines, and in applying them to the statute of limitations as pleaded by the defendant here, I think they irresistably lead to the conclusion that this plea cannot be sustained.   I am well aware of the construction put upon this statute by the Supreme Court in the case of *Southmayd* v. *Beardsley,* but from repeated examinations of that case I have

never yet been able to yield to it my assent, and sitting here in a court of review in the last resort, I feel it not only my privilege but my duty to express my dissent from the opinion given in that case, but I do so with all due respect for the learning and high judicial character of the late Chief Justice who pronounced that opinion.

I think the judgment of the Supreme Court sustaining the demurrer in this case, should be reversed.

The CHANCELLOR and Judge McCARTER concurred in the opinion of Judge NEVIUS on both issues. Judges SPEER and SPENCER concurred in so much of it as relates to the plea of justification.

CARPENTER, J. In the view I take of these cases, it is chiefly important to ascertain whether any and what construction has been given in the courts of New York to the statute of their state under which this controversy has arisen. The act charged as an injury was committed in the state of New York, and the justification sought to be established is set up under a statute of that state. We should seek for light to decide the controversy in the decisions of the New York courts, whose exposition of the statute, as it seems to me, must be here received as part of the law itself. This court will not, at least according to my judgment, ought not attempt to overrule the decisions of the courts of other states in the construction of their own statutes, in regard to controversies there originating, whatever might be our opinion, were the matter here a subject of original inquiry. The Supreme Court of the United States, in all controversies arising under the statutes of the respective states, conforms to the decisions of the courts of those states, in regard to the construction of their own statutes, so far as they comport with the constitution of the United States. " This course," says Chief Justice Marshall, " is founded on the principle supposed to be universally recognized, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus no court in the universe which professed to be governed

by principle, would, we presume, undertake to say that the courts of Great Britain or France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal which should correct such misunderstanding. We receive the construction given by the courts of the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction, than to depart from the words of the statute." *Elmendorf* v. *Taylor*, 10 *Wheat.* 152, (6 *Condensed Rep.* 50.) It would be a strange perversion of principles, if in regard to controversies originating in the state of New York under the statute law of that state, the rights or liabilities of parties should be different according as the suit might be brought there or here.

It is unnecessary for me to recite the statute of New York, which has given rise to this controversy, but I will very briefly refer to the cases which have there arisen under it, in order to ascertain whether they will furnish any aid in its construction. The first case was that of *The Mayor &c.* v. *Lord*, 17 *Wend.* 285 ; affirmed in error, 18 *Wend.* 126. In this case it was settled, I think satisfactorily, that the corporation was liable to pay, after assessment, the damages sustained by the destruction of merchandize and other personal effects which were in the building at the time of its destruction, and were the property of the occupant, on the ground that he had such an interest as was provided for by the act. The reasoning of the court went to shew that no person but such as had an estate or interest in the building was entitled to relief under the act; a principle fully settled in the succeeding case of *The Mayor &c.* v. *Stone*, 20 *Wend.* 139. In this case (affirmed in error 25 *Wend.* 157) it was held that the owner or lessee of a building destroyed under the authority of the act, who had goods on hand as a factor or commission merchant, and had a lien on the same for charges or advances, might claim damages to the amount of his lien, but not for the value of the goods. And further it was held that one having goods stored in a building destroyed, of which he was not tenant or occupant, was not entitled to compensation under the act. The jury under the statute were only author-

ized to assess the damages sustained by the owner or other person having an estate or interest in the building destroyed.

It having been thus expressly decided that the owner of goods having no interest in the building destroyed, had no remedy by assessment under the act, an attempt was made to render the city liable in another mode. Actions were then commenced against the city upon the ground that the corporation was bound to make compensation for these goods, which it was alleged, had been taken and destroyed for a public use. It was urged that the act having been done for the benefit of the city at large, by its agents, under a statute which made no provision for remuneration, the law raised an implied promise to pay the damages. Assuming the premises, it would seem as if the conclusion must follow. Admit that the destruction of the property of the plaintiffs was, by virtue of a grant of the power of eminent domain to the city, exercised by its agents under the authority of the statute, and it is difficult to see how the right to compensation can be denied. " In a clear case of a grant of the right of eminent domain," said Senator Sherman, " to be exercised for its corporate use, containing no provision whatever for compensation to the owner, I am not disposed to doubt but that the law would step in and supply the defect, and furnish a suitable remedy to the persons whose property was appropriated, and perhaps against a party benefitted." 2 *Denio*, *pp*. 467, 468. But much the same answer was then given, as is now given in the suits before the court. It was said that the statute contained no grant of power, but it simply regulated the exercise of the great natural right of necessity, making the judgment of the officers conclusive of the existence of that necessity.

The doctrine of necessity is a well settled common law principle, not indeed controverted, and which is well stated in the opinion of the Chief Justice delivered in these cases in the court below. In the first case decided in New York under this statute and already referred to, the doctrine was admitted, though this application of it does not seem to have been adopted. On the contrary, Chief Justice Neilson, who delivered the opinion

of the court, in effect says, that this doctrine and the exercise of power under this statute stand on totally different grounds. " The one," he says, " presents a question of responsibility by a citizen acting under the influence of an overruling necessity solely for the public good : the decision turning not so much upon the want of merit in the claim for redress, as upon the injustice of making the defendant liable, who had thus acted for the benefit of the public. The other (the case upon the statute) is the question between the sufferer and the city, for whose benefit his property had been sacrificed, where the authorities of the city are empowered to determine *at discretion* when and under what circumstances it shall be sacrificed." And further he assumed that the property in question had been destroyed for the use and benefit of the city, and that in reason and justice the owner was entitled to compensation from its common funds. It was not the point of the case then before the court, but it was clearly intimated in the prevailing opinion that the statute contained a grant of power to the city, and that the taking and destruction was an exercise of the right of eminent domain thus delegated. *The Mayor &c.* v. *Lord*, 17 *Wend. pp.* 290, 292, &c.

If I was called upon to place a construction upon a similar statute of this state, I think I should find it difficult to avoid the same conclusion. The common law right as generally expounded in the books, is based upon that of an instant, overwhelming necessity : the statute seems to provide a discretionary power to be exercised by the officers to whom delegated as expediency may require. In consistency with this view, compensation is provided, to some extent at least, for those who may be injured by the destruction of property in the exercise of this power. But in the subsequent cases in New York, the judges treat this as a taking for private benefit and not for public use, and such is the view taken in these cases in the court below. Undoubtedly the destruction under the common law right of necessity, as a measure of self defence by individuals whose property could only be preserved by a resort to this extreme right, might properly be regarded as a measure of individual benefit. In such case those who act under the pressure of inevitable danger, may well be said to act, not so much for the public at large,

as for those few of their fellow citizens, whose property is thus protected. With great respect however for the opinions expressed to the contrary, I cannot but think that a destruction under a general provision for restraining fires in a great city, where, when the provision was made, it was uncertain upon ·whom the misfortune might fall, may well be said to be a taking for a public use. The whole city may in turn be exposed to the same danger, and the whole city may in turn be obliged to appeal to the same means of protection.

But whatever might be the construction I should apply to a similar statute in this state, I am not at liberty in regard to this foreign enactment to follow out the conclusions of my own mind, when in opposition to the interpretation given by the courts which have the primary right to adjudicate upon its terms and effect. Ambiguous as may seem the result of the earlier cases in regard to the principles which are now drawn in question, yet it seems to me that these principles were subsequently settled in a mode we are not at liberty to disregard. I refer to the cases of *Lawrence* v. *The Mayor &c. of New York,* and *Russell* v. *The Mayor &c.;* the latter case reported in 2 *Denio* 461. These suits were originally brought in the Superior Court of the city of New York. It was there held by Oakley, J. in delivering the opinion of the court—and his view on that point was adopted by the Supreme Court—that the Mayor and Aldermen in the matter in question were not the agents of the corporation, but officers charged with special duties by the state, and that the corporation was not responsible for their acts any further than the law had made them so. In the Court of Errors, however, where the judgment of the Superior Court and of the Supreme Court was affirmed, the decision was not placed upon this ground, and Senator Sherman, who delivered the leading opinion, expressed a contrary view on this point.

It was held in all those courts, though more particularly insisted on in the court of final resort, that the property destroyed for the purpose of arresting the conflagration, was not taken for public but for private use; that the authority conferred by the statute on the Mayor &c. to order the destruction of buildings to prevent the spreading of the fire, is not a grant of the right

of eminent domain, but a mere regulation of the common law right of necessity for individual and local benefit; and that it was not therefore within the constitutional provision regulating compensation to the owner of private property taken for public use.   It was decided that the city was not liable in an action at common law for the value of the personal property destroyed under the order of the Mayor; and this result was reached by holding that the statute was not within the provision of the constitution requiring compensation.   The two opinions delivered on the part of the judges who concurred in affirming the judgment of the Supreme Court, fully and clearly enunciated this doctrine, and I think that here it must be taken as the doctrine of the court.   I think we cannot here disregard the construction thus given to their own statute, and in the face of the decision thus made and of those opinions, hold the statute void. If we feel bound by, and follow those opinions, there is an end to the present actions of trespass.

With regard to the other leading objection, that the statute is void as depriving the party whose property is injured of the right of trial by jury, the distinction taken is not without force, and might, in the proper forum, deserve much consideration. But it is not such a case as that I would venture to pronounce a statute of another state void on the ground of repugnance to a constitutional provision of that state.   The cause of action arose in New York; it is a controversy upon a New York statute, and there this statute ought to be construed and its meaning and effect settled.   It would be an exceedingly delicate duty under any circumstances, for us to declare a statute of another state void on the ground of being repugnant to the constitution of that state.   I cannot think this is such a case as would justify us so to declare this statute unconstitutional; a statute which has for so many years been retained among the laws of the State of New York, and has sustained unscathed the examination of its courts.   With a strong feeling of the hardship of the case of these plaintiffs, still I feel constrained to the conclusion that the judgment of the Supreme Court ought to be affirmed.

In the case of *Howe* v. *Lawrence* another point as to the ap-

plication of the statute of limitations is presented, which arises upon the demurrer of the plaintiff to the defendant's rejoinder. It is not necessary to state the pleadings. The question was argued, not upon the special demurrer, which therefore I shall not examine, but broadly upon the application of the statute.

I do not regard this as now an open question in this state. It was decided as long ago as 1835, in *Beardsley* v. *Southmayd*, 2 *Green* 171, with the sanction of all the judges ; a case followed and approved in *Taberer* v. *Brentnall*, 3 *Harr.* 262, and it has since been treated as settled law in this state. In *Beardsley* v. *Southmayd*, as in the present case, the pleadings raised the question whether a non-resident plaintiff who had a cause of action accruing abroad, against a defendant also a non-resident, of more than six years standing, which would be barred by our statute if both parties, or the defendant only, had resided here, could pursue such defendant into this state and here maintain an action against him.

The 8th section of our statute of limitations (*Rev. Stat.* 94 ; *Act of* 1820, *Rev. L.* 670) provides that if the person against whom any cause of action enumerated in a previous section had accrued, "shall not be resident in this state, when such cause of action accrues, or shall remove from this state," &c., then the period of his non-residence shall not be computed as any part of the time limited by the statute. It was held in the case referred to, that the contingency spoken of in this proviso upon which the action was to be saved, was upon the supposition that a right of action existed and accrued here, and that it was not intended to apply to foreign creditors whose cause of action accrued elsewhere, and whose debtor was also then non-resident. That the true intent of the statute was to consider the absence or non-residence of the debtor, an excuse only in favor of creditors who reside here or whose cause of action accrued here.

Whatever might have been the doubt when the question was first raised, yet this rule has now stood for law in this state so long and in my judgment is supported by such obvious policy, that I am unwilling to disturb it. Of the policy of the decision I do not suppose there could be any question. To unsettle it

would be to invite foreign plaintiffs to make this state, which is the great thoroughfare of this country, an arena for the litigation of antiquated claims, whenever the debtor can be brought within its jurisdiction.

It seems to me there is nothing in the distinction sought to be made between this case and that of *Beardsley* v. *Southmayd*, the same general principle applies to both.   I am of the opinion that the demurrer of the plaintiffs should be overruled and the rejoinder sustained, and of consequence that the judgment of the Supreme Court be affirmed.

Judges PORTER and SCHENCK concurred with CARPENTER, J.

Judges SPEER and SPENCER concurred in so much of the opinion delivered by CARPENTER, J. as relates to the application of the statute of limitations, and that the demurrer of the plaintiff should be overruled.

The first case, *American Print Works* v. *Lawrence*, was reversed by the following vote :

*To Reverse*—The CHANCELLOR, NEVIUS, SPEER, SPENCER and McCARTER—5.

*To Affirm*—CARPENTER, PORTER, SCHENCK—3.

In the second case, *Howe* v. *Lawrence*, the judgment was affirmed by overruling the demurrer of the plaintiff to the defendant's rejoinder, and thereby sustaining the rejoinder by the following vote :

*To sustain rejoinder and consequently affirm*—CARPENTER, PORTER, SCHENCK, SPEER, SPENCER—5.

*Contra*—The CHANCELLOR, NEVIUS, McCARTER—3.

CITED *in Howe* v. *Lawrence*, 2 *Zab.* 102–110; *Amer. Print Works* v. *Lawrence*, 3 *Zab.* 22–603–604–611; *Hoguet* v. *Wallace*, 4 *Dutch.* 526; *Jersey Company* v. *Davidson*, 5 *Dutch.* 424; *Nolin* v. *Blackwell*, 2 *Vr.* 173; *Wood* v. *Leslie*, 6 *Vr.* 474.